## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

DILIP MEHTA, M.D., d/b/a
SPRING HILL RADIOLOGY,

      Plaintiff,

v.                                         Case No. 8:06-CV-1284-T-24-MSS

HCA HEALTH SERVICES OF FLORIDA,
INC., d/b/a HCA OAK HILL HOSPITAL,

      Defendant.

_____/

## ORDER

This cause comes before the Court on Defendant HCA Health Services of Florida, Inc.'s ("HCA") Motion for Summary Judgment (Doc. No. 17) as to Plaintiff Dilip Mehta, M.D. d/b/a Spring Hill Radiology's ("Spring Hill") national origin discrimination claim under 42 U.S.C. § 1981(b). Spring Hill argues that a genuine issue of material fact remains as to whether HCA discriminated against the partnership when it attempted to modify and failed to renew the parties' exclusive contract for radiology services. (Doc. No. 25.) With the Court's permission, HCA filed a reply. (Doc. No. 30.) For the reasons stated herein, HCA's motion is granted.

**I.  Facts**

Defendant HCA Health Services of Florida, Inc. operates HCA Oak Hill Hospital in Spring Hill, Florida. Since the mid-1980's, Plaintiff Spring Hill Radiology has been the exclusive provider of radiology services at the hospital, pursuant to a series of exclusive contracts. The final contract between Spring Hill and HCA was for a two-year term to extend

from January 1, 2002, to December 31, 2003. Dilip Mehta, M.D. is a radiologist of Indian descent who performed radiology services at the hospital pursuant to the contracts between Spring Hill and HCA.

Arthur Flatau, M.D. is one of the top ten revenue-generating physicians at the hospital. On September 21, 2003, Flatau accused Mehta of touching his wife inappropriately. Flatau demanded that Spring Hill leave the hospital quietly or else Flatau would press criminal charges against Mehta.

Flatau again confronted Mehta on several occasions over the following weeks, each time angrily yelling racial slurs at Mehta and demanding that Spring Hill leave the hospital quietly. Flatau said to him, "you Indian bastards, you do not belong here, this is not your country." On another occasion, Flatau pushed Mehta to the wall, put his finger in Mehta's face, and said, "you mother fucking Indian slime ball, do you know in your mother fucking Indian language what that means." Flatau also met with the Chief Executive Officer of Oak Hill Hospital, Mickey Smith, and repeatedly insisted that either Spring Hill and Mehta had to leave the hospital or he would leave. Flatau explained to Smith that the incident involving his wife was not an issue that he was going to be able to live with.

On or about October 24, 2003, Mehta reported Flatau's threatening behavior and racist demands to Smith. Smith responded that, although Flatau admitted the threatening behavior, the hospital was not going to suspend him or prohibit him from entering the radiology department were Mehta worked. During this meeting, Smith and Mehta also discussed whether HCA would renew the Spring Hill contract. Smith told Mehta that "the only reason not to renew the . . . contract is because of Dr. Flatau." He added that "this has nothing to do with you as a

radiologist, your services or anything else." Furthermore, Smith informed Mehta that, despite Flatau's insistence that Spring Hill leave the hospital, he would talk with the Assistant Administrator of Oak Hill Hospital, Tom Edwards, and provide Spring Hill with a draft of a renewal contract.

On October 28, 2003, Mehta met with Smith and Edwards to discuss several issues relating to the contract renewal. One issue concerned the ability of Spring Hill to recruit and retain the appropriate number of full-time radiologists, as one of the radiologists was leaving the partnership. Mehta agreed that Spring Hill would be able to achieve full radiologist staffing by January 31, 2004. At the conclusion of the meeting, Edwards informed Mehta that he would be able to produce a draft contract within a couple of days.

On November 3, 2003, Mehta again met with Edwards about the renewal of the Spring Hill contract. Edwards informed Mehta that he would not be able to provide the draft contract for another three to four weeks because several HCA officials and departments first would have to review it. Mehta explained that he would not be able to recruit another radiologist without a contract from the hospital, and therefore, he proposed that the January 31, 2004 deadline by which he was required to achieve full radiologist staffing be extended to 90 days after the contract was signed. Edwards agreed.

Shortly thereafter, on or about November 6, 2003, Flatau filed a complaint against Mehta with the hospital's medical executive committee, which initiated an investigation into Flatau's allegations that Mehta inappropriately touched his wife. While the committee's investigation was ongoing, on December 1, 2003, HCA sent Mehta the draft renewal contract, who then forwarded it to his attorney. Approximately two weeks later, on December 15, 2003, the

hospital's Board of Trustees informed Mehta that, based on the review committee's report, the Board had decided not to renew his contract and that he had 48 hours to resign from Oak Hill's medical staff.

Despite the fact that the Oak Hill Board asked for Mehta's resignation, the contract negotiations continued. After consulting with his attorney, on December 17 and 30, 2003, Mehta met with Smith and Edwards to discussed the draft contract. During these meetings, the parties' negotiations centered on Spring Hill's ability to achieve full radiologist staffing. However, they also discussed other issues, such as HCA's requirement that the radiologists have a certain amount of medical malpractice insurance, HCA's expectation that the radiologists work eight hours per day, the timeliness of Spring Hill's radiology reports, and Spring Hill's previous treatment of certain individual patients. At the December 30, 2003 meeting, because the parties had not reached agreement on all the contract terms and the December 31st contract termination date was imminent, they agreed to extend the existing contract for two months until February 28, 2004, in order to complete the contract negotiations.

By January 16, 2004, HCA and Spring Hill had not agreed upon the terms of the contract renewal, and no contract had been signed. On that date, Smith informed Mehta that HCA had decided not to renew the contract with Spring Hill. Smith explained that he "has to do what is right for the hospital" and that "there is enough pressure from Dr. Flatau."

Thereafter, Spring Hill filed this suit against HCA for national origin discrimination in violation of 42 U.S.C. § 1981(b). Specifically, Spring Hill alleges that HCA wrongfully capitulated to Flatau's racist demands when it attempted to modify and failed to renew the parties' exclusive contract for radiology services.

4

**II.     Standard of Review**

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party bears the initial burden of showing the Court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986). A moving party discharges its burden on a motion for summary judgment by "showing" or "pointing out" to the Court that there is an absence of evidence to support the non-moving party's case. *Id.* at 325, 106 S. Ct. at 2554. Rule 56 permits the moving party to discharge its burden with or without supporting affidavits and to move for summary judgment on the case as a whole or on any claim. *See id.* When a moving party has discharged its burden, the non-moving party must then "go beyond the pleadings," and by its own affidavits, or by "depositions, answers to interrogatories, and admissions on file," designate specific facts showing there is a genuine issue for trial. *Id.* at 324, 106 S. Ct. at 2553.

In determining whether the moving party has met its burden of establishing that there is no genuine issue as to any material fact and that it is entitled to judgment as a matter of law, the Court must draw inferences from the evidence in the light most favorable to the non-movant and resolve all reasonable doubts in that party's favor. *Samples v. City of Atlanta*, 846 F.2d 1328, 1330 (11th Cir. 1988). Thus, if a reasonable fact finder evaluating the evidence could draw more than one inference from the facts, and if that inference introduces a genuine issue of material fact, then the court should not grant the summary judgment motion. *Augusta Iron & Steel Works, Inc. v. Employers Ins. of Wausau*, 835 F.2d 855, 856 (11th Cir. 1988) (per curiam). A

dispute about a material fact is "genuine" if the "evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 2510, 91 L. Ed. 2d 202 (1986).

### III.     Discussion

Section 1981 prohibits intentional discrimination in the making and enforcement of private contracts, including employment contracts. 42 U.S.C. § 1981. A plaintiff may prove a claim of national origin discrimination under § 1981 through direct or circumstantial evidence. *Price v. M&H Valve Co.*, No. 05-15205, 2006 WL 897231, at *15 (11th Cir. Apr. 7, 2006). Here, Spring Hill asserts that it has presented both direct and circumstantial evidence of national origin discrimination, although it does not distinguish between the two methods of proof in its memorandum.

#### A.     Direct Evidence of Discrimination

"Direct evidence of discrimination is evidence which, if believed, would prove the existence of a fact in issue without inference or presumption. Only the most blatant remarks, whose intent could be nothing other than to discriminate on the basis of [a protected characteristic] constitute direct evidence of discrimination." *Bass v. Bd. of County Comm'rs.*, 256 F.3d 1095, 1105 (11th Cir. 2001) (quotations, alterations, and citations omitted). Furthermore, "remarks by non-decisionmakers or remarks unrelated to the decisionmaking process itself are not direct evidence of discrimination." *Standard v. A.B.E.L. Servs., Inc.*, 161 F.3d 1318, 1330 (11th Cir. 1998). When refuting direct evidence of discrimination, the defendant's burden "is one of persuasion and not merely production." *Bass,* 256 F.3d at 1104.

The Court concludes that Spring Hill did not present any direct evidence of discrimination. Spring Hill's only evidence concerning discriminatory intent consists of Flatau's comments to Mehta that "you Indian bastards, you do not belong here, this is not your country" and "you mother fucking Indian slime ball, do you know in your mother fucking Indian language what that means." These statements by Flatau do not constitute direct evidence that HCA acted with discriminatory intent because Flatau was not the decisionmaker, nor did he have the authority to make any decision on behalf of the HCA, with regard to the renewal of the Spring Hill contract. Furthermore, the comments are not directly related to the decisionmaking process, but rather constitute generalized name-calling.[1] Although Flatau's statements may provide circumstantial support for Spring Hill's claims, they do not constitute direct evidence of discrimination. *See Standard*, 161 F.3d at 1330.

### B. Circumstantial Evidence of Discrimination

When a plaintiff relies on circumstantial evidence to prove discrimination under § 1981, the Court uses the traditional *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973), burden-shifting analysis. *Brooks v. County Comm'n of Jefferson County, Ala.*, 446 F.3d 1160, 1162 (11th Cir. 2006). Under this framework, the plaintiff must raise an inference of discrimination by establishing a prima facie case of discrimination. *McDonnell Douglas Corp.,* 411 U.S. at 802, 93 S. Ct. at 1824. The burden then shifts to the

---

[1] Spring Hill argues that it was Flatau–not Smith–who was the actual decisionmaker. Such an argument necessarily requires the Court to presume Flatau's influence or leverage over Smith, who was the official decisionmaker, and to impute Flatau's discriminatory intent to him. Accordingly, the argument does not "prove the existence of a fact in issue without inference or presumption," and thus, does not constitute direct evidence of discrimination. *Bass*, 256 F.3d at 1105.

defendant to "articulate some legitimate nondiscriminatory reason" for the alleged discrimination. *Id.* Once the defendant produces such a reason, the plaintiff must then prove that the legitimate reason was a mere pretext for discrimination. *Id.* at 804, 93 S. Ct. at 1826. To avoid summary judgment, the plaintiff must produce sufficient evidence to show "that the employer intentionally discriminated against [it] because of [its] [protected characteristic]." *Holifield v. Reno*, 115 F.3d 1555, 1565 (11th Cir. 1997) (per curiam).

To establish a prima facie case of disparate treatment discrimination under the *McDonnell Douglas* framework, a plaintiff must establish by a preponderance of the evidence: "(1) a discriminatory animus . . . , (2) an alteration in the terms and conditions of . . . employment by the employer, and (3) a causal link between the two." *Llampallas v. Mini-Circuits, Lab, Inc.*, 163 F.3d 1236, 1245-46 (11th Cir. 1998). HCA argues that Spring Hill has failed to establish a prima facie case of disparate treatment because there is no causal link between the non-renewal of the Spring Hill contract and Flatau's alleged discriminatory animus.[2]

The parties characterize this as a "cat's paw" case. Under a "cat's paw" theory of liability, the discriminatory animus of a non-decisionmaking employee can be imputed to the neutral decision-maker when the decisionmaker does not conduct his own independent investigation. *Llampallas*, 163 F.3d at 1249. "In such a case, the recommender is using the decision maker as a mere conduit, or 'cat's paw' to give effect to the recommender's discriminatory animus." *Stimpson v. City of Tuscaloosa*, 186 F.3d 1328, 1332 (11th Cir. 1999). Essentially, where the individual accused of discriminatory animus is "an integral part" of a

---

[2]Because the Court concludes that Spring Hill has failed to establish a causal link, the Court assumes without deciding that Flatau's comments reflects his discriminatory animus.

multi-level personnel decision, their improper motivation may "taint[] the entire . . . process." *Schoenfeld v. Babbit*, 168 F.3d 1257, 1268 (11th Cir. 1999). To survive summary judgment on this theory, Spring Hill must show that Flatau harbored a discriminatory animus against it and that the decisionmaker, Smith, acted in accordance with Flatau's discriminatory demands without separately evaluating whether HCA should renew its contract with Spring Hill. *See Llampallas*, 163 F.3d at 1249.

      The Court concludes that summary judgment is appropriate because Spring Hill has failed to establish a causal connection between the non-renewal of the Spring Hill contract and Flatau's alleged discriminatory animus. Spring Hill has presented no evidence that Smith's decision was tainted by Flatau's discriminatory intent or that Smith's decision was simply a tacit approval of Flatau's racist demands. Rather, the undisputed evidence shows that HCA decided not to renew the contact only after a thorough and independent assessment of Spring Hill's ability to provide radiology services according to HCA's terms. In the same October 2003 meeting in which Mehta reported Flatau's racist demand that he leave the hospital, Smith informed Mehta that he would provide a draft of a renewal contract. Their negotiations continued through the Fall of 2003 and included drafts of the contract and several meetings between Smith, Edwards, and Mehta. The parties even agreed to extend the existing contract, so that the renewal negotiations could continue. It was only after extensive negotiations revealed that the parties could not reach an agreement on the terms that the negotiations failed, and HCA decided not to renew. Spring Hill has not established that Smith succumbed to Flatau's demands without independently investigating the advantages and disadvantages of renewing the contract, and therefore, Spring Hill has not established a causal connection pursuant to a "cat's paw"

theory of discrimination. *Hankins v. Airtran Airways, Inc.*, No. 06-15406, 2007 WL 1705579, at *6 (11th Cir. June 14, 2007) (concluding that, even when the decisionmaker was aware of his colleague's bias, the plaintiff failed to establish a causal connection because the decisionmaker conducted an independent investigation regarding whether to terminate the plaintiff).

Moreover, even assuming that Spring Hill's evidence was sufficient to create an issue of fact as to whether Flatau was the actual decisionmaker, the Court concludes that Spring Hill has failed to establish that HCA's legitimate, nondiscriminatory reason for not renewing the contract–that Spring Hill refused to agree to HCA's terms regarding radiology services at the hospital–was pretextual. In a "cat's paw" scenario, "the causal ink between the animus of a subordinate and the decisionmaker's decision is severed if instead of merely tacitly approving or otherwise 'rubber stamping' another's adverse recommendation . . . , the decision maker conducts an independent investigation into the allegations against the plaintiff." *Jackson v. Mid-America Apartment Communities*, 325 F. Supp. 2d 1297, 1302 (M.D. Ala. 2004). As stated previously, any causal connection between Flatau's discriminatory intent and the decision not to renew the Spring Hill contract was severed as a matter of law when Smith and Edwards continued the contract negotiations with Mehta, despite their knowledge of Flatau's racist demands.[3]

---

[3] The Court rejects Spring Hill's contention that HCA has offered inconsistent reasons for not renewing the contract and that such inconsistencies are evidence of pretext. The undisputed evidence reveals that the parties' negotiations centered on the specific terms by which Spring Hill would be required to provide radiology services. When Spring Hill did not agree to HCA's terms, HCA decided not to renew the contract. Spring Hill has failed to demonstrate that HCA has taken inconsistent positions regarding this decision, or that such decision was discriminatory.

Finally, even assuming that HCA's true reason for not renewing the contract was its desire to retain Flatau, despite his discriminatory animus, because he is more valuable to the hospital, such reason is a legitimate, non-discriminatory reason that Spring Hill has failed to rebut. "[Section 1981] does not prohibit an employer from discharging an employee because it wishes to retain another, presumably more valuable, employee–unless, of course, the desired employee is of a different [national origin] from the plaintiff, and the decision can be linked to a discriminatory animus towards persons of the non-desired employee's [national origin]." *See Llampallas*, 163 F.3d at 1248-49. Here, there is no evidence that Smith adopted the racial animus of Flatau. Therefore, even assuming that Smith chose Flatau over Mehta because he brings more money to the hospital, such a decision based on economic concerns, including a desire to retain a valued physician, is not a form of actionable discrimination. *See Brown v. Am. Honda Motor Co., Inc.*, 939 F.2d 946, 951 (11th Cir.1991) ("[A] contract may be granted for a good reason, a bad reason, a reason based on erroneous facts, or for no reason at all, as long as it is not for a discriminatory reason.") (quotations and citations omitted). Accordingly, viewing the record in the light most favorable to Spring Hill, the Court concludes that Spring Hill has failed to put forth evidence to raise an genuine issue of material fact sufficient to withstand summary judgment.

**IV.     Conclusion**

It is **ORDERED AND ADJUDGED** that HCA's Motion for Summary Judgment (Doc. No. 17) is **GRANTED**. As there are no remaining claims before the Court, the pretrial conference set in this case for Wednesday, September 5, 2007, is hereby cancelled, and this case is removed from the Court's October 2007 trial calendar. The Clerk is directed to enter judgment in favor of HCA and to close this case.

**DONE AND ORDERED** at Tampa, Florida, this 20th day of August, 2007.

Copies to:
Counsel of Record

SUSAN C. BUCKLEW
United States District Judge